**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Meaghan Croke, being first duly sworn, hereby depose and state as follows:

*Introduction and Agent Background*

1.      I have been a Special Agent, with the United States Department of Justice,

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since May of 2020.  I am a

graduate of the ATF National Academy Special Agent Basic Training Program and the

Federal Law Enforcement Training Center, Criminal Investigator Training Program.  As

a result of my training and experience as an ATF Special Agent, I am familiar with

Federal criminal laws pertaining to firearms violations.  As a Special Agent, I am also

authorized to carry firearms, execute warrants, make arrests for offenses against the

United States, and perform other such duties as authorized by law.

2.      I submit this affidavit in support of an application for the issuance of a

search warrant authorizing the search of:

    a. The person described as DEVIN FERNANDES (hereinafter referred

        to as SUBJECT PERSON or FERNANDES), as more particularly

        described in Attachment A-1 (attached hereto and incorporated

        herein by reference) for the items described in Attachment B-1, at

        whatever location he is found, regardless of the SUBJECT

        PERSON's location or proximity to the SUBJECT PREMISES,

        including any cellular telephones or digital storage devices he may

        have on his person;

    b.   Apartment 506 at 200 Esten Ave., Pawtucket, Rhode Island (hereinafter referred to as the SUBJECT PREMISES), as more particularly described in Attachment A-2 (attached hereto and incorporated herein by reference), for the items described in Attachment B-2; and

    c.   A black Chevy pickup truck bearing Florida registration LJTW77 (hereinafter referred to as the SUBJECT VEHICLE), as more particularly described in Attachment A-3 (attached hereto and incorporated herein by reference), for the items described in Attachment B-3.

3.    For the reasons set forth below, I believe that Brandon DOLIVRAMENTO (DOB: 11/07/1990) is a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2) (hereinafter referred to as the TARGET OFFENSES).  I further believe that the firearm is being stored for him by FERNANDES at the SUBJECT PREMISES.

4.    I have personally participated in the investigation of DOLIVRAMENTO since May 2021.  The facts in this affidavit come from my personal observations, my training and experience, video surveillance, and information obtained from other agents and witnesses.  This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### *Probable Cause*

5.       On 04/03/2021 at approximately 1:55 a.m., a Rhode Island State Trooper made a motor vehicle stop on a Chevrolet Malibu (Texas registration NDF6668) due to the passenger side front tire being completely shredded and the operator driving on a rim. The operator of the vehicle was identified as Brandon DOLIVRAMENTO (DOB: 11/07/1990), and the two passengers in the vehicle were identified as Ruby Delacruz and Alycka Washington. While speaking with the occupants, a Rhode Island State Trooper observed Styrofoam cups in the center console cup holders and detected the strong odor of alcoholic beverage coming from inside the vehicle. A Rhode Island State Trooper performed three different standardized sobriety field tests to which DOLIVRAMENTO displayed signs of impairment.  DOLIVRAMENTO was subsequently taken into custody and committed to the Ault Correctional Institution (ACI) on 04/03/21.

6.        I conducted a criminal history query of Brandon DOLIVRAMENTO (DOB: 11/07/1990, FBI# 728460CD6) and learned that he has 23 arrests and the below listed felony convictions:

- P2-2016-1957 Drug Trafficking (ten-year sentence with four years to serve);

- P2-2012-3197 Drug Possession (eighteen months' probation);

3

- P2-2010-0348 Sex Offender Address Change (four-year sentence with six months to serve);

- P1-2008-1608 Second Degree Child Molestation (eight-year sentence with two years to serve). I read a Providence Journal article that stated the victim in this case was an eleven-year-old child.

7.      From 04/03/21, the day of DOLIVRAMENTO's arrest until the present DOLIVRAMENTO has placed numerous outgoing telephone calls from the ACI, which were recorded by the ACI's phone system.  During calls placed by DOLIVRAMENTO to call numbers 413-799-4729 (Alycka Washington) and 401-699-6749 (Ruby Delacruz), an individual referred to as "Devin" was conferenced in by way of three-way calls initiated by Delacruz or Washington.  A detailed description of the contents of these recorded conversations is contained in the affidavit submitted in support of a warrant authorizing the installation and use of a pen register and trap and trace device (21-SW-259-LDA), which is attached as Exhibit A and incorporated herein.

8.      During these three-way calls, DOLIVRAMENTO requested that Devin remove something from the trunk of his vehicle.  Devin later informed DOLIVRAMENTO that the item had been removed from DOLIVRAMENTO's vehicle and was in Devin's possession.

9.      The ATF requested and received subscriber and toll records for 413-799-4729 (Alycka Washington) and determined that Devin's call number is 401-548-1956, based on the dates and time of the recorded three-way calls initiated by Washington

4

while talking with DOLIVRAMENTO.  ATF personnel queried call number 401-548-1956 through a commercially available people-locator database (Accurint) and learned that the call number is associated with Devin FERNANDES.

10.     The Accurint search also reported that the number was associated with the address of the SUBJECT PREMISES.  A utility query requested for FERNANDES reported that FERNANDES has an active utility account at the SUBJECT PREMISES. The contact number for FERNANDES' utility account was 401-548-1956.

11.     In one May 21, 2021 call between DOLIVRAMENTO and Washington, Washington stated that "Devin" walked to DOLIVRAMENTO's vehicle, which was parked outside Washington's residence of 141 Warren Ave, Pawtucket, RI, and retrieved DOLIVRAMENTO's firearm from the trunk.  Per Google Maps, the SUBJECT PREMISES is a three-minute (.2 mile) walk from Washington's residence, which is consistent with Washington's statement to DOLIVRAMENTO that "Devin" walked over to retrieve DOLIVRAMENTO'S gun out of the trunk of DOLIVRAMENTO'S vehicle.

12.     On 05/21/21, ATF Task Force Officer (TFO) Smith observed a Gray Honda sedan that had a trunk displaying RI Registration RR-196 parked in the left side driveway of 141 Warren Ave. (Washington's residence).  A registration query revealed that the vehicle's registration was suspended and last registered to DOLIVRAMENTO.

This is also consistent with Washington telling DOLIVRAMENTO that "Devin" walked over to get DOLIVRAMENTO'S gun out of the trunk of DOLIVRAMENTO'S vehicle.

13.     On 5/28/21, at approximately 10:15 a.m., TFO Smith was conducting surveillance of 200 Esten Ave, the Village Loft apartments.  TFO Smith observed the SUBJECT VEHICLE circle the Village Loft apartments parking lot and then back into a parking spot near the wall on Esten Ave.  The operator stayed inside the vehicle for approximately 10-15 minutes.  At approximately 1030 a.m. FERNANDES exited the vehicle and walked to the wooden walkway steps leading to Esten Ave.

14.     The walkway leading to Esten Ave. has a small landing halfway up, which has an access door leading to an underground passage from the parking lot to the Village Loft apartments.  TFO Smith observed FERNANDES enter the Village Loft apartments access door.  Approximately 10 minutes later, FERNANDES exited the same access door, walked directly to the SUBJECT VEHICLE, and entered the driver's-side door, remaining in the truck for approximately 45 minutes.

15.     At approximately 1130 a.m., TFO Smith notified Pawtucket Police Officers who were patrolling in the area of the SUBJECT VEHICLE idling in the Esten Ave parking lot.  Pawtucket Police Officers made contact with FERNANDES who was immediately confrontational with Police, stating that he lived there and felt he had no reason to be questioned.  FERNANDES initially refused to identify himself at first but after some time reasoning with him, FERNANDES provided his license and a piece of

6

mail listing his name and the SUBJECT ADDRESS.  Pawtucket Police Officers asked
FERNANDES if he resided at Apt 506, which and FERNANDES replied yes.  Once
FERNANDES identified himself, he no longer wanted to speak with police and as a
result the contact was ended.

16.    Based on the foregoing, I submitted an affidavit in support of an
application pursuant to 18 U.S.C. §§ 3122 and 3123 requesting that the Court issue an
Order authorizing the installation and use of a pen register and trap and trace device
("pen/trap device") on call number 401-548-1956 to ascertain FERNANDES' physical
location, which was granted by the Court on June 4, 2021 (21-SW-259-LDA).

17.    On 05/31/2021 at 7:02pm, DOLIVRAMENTO, using the ACI recorded
lines, called Delacruz at call number 401-699-6749.  SA Croke listened to the call and
learned that at (06:35) Delacruz asked DOLIVRAMENTO "you want to talk to Alycka?"
DOLIVRAMENTO replied "I just talked to her" DOLIVRAMENTO instructed Delacruz
"put her on the phone."  At (06:49) a female voice who SA Croke believes to be
Washington says "Hello."  DOLIVRAMENTO and Washington then begin to discuss
Washington's recent move.  At (11:50) Washington tells DOLIVRAMENTO "I just need
Ori to like, come with me though cause I can't carry it by myself or I don't… my car's
too small for–for it.  So… but he's like I'm around I'll help you cause cause he was like
you know Brandon's gonna say some shit like no one helped you da da da… I'm like I
don't fucking know, I don't care."  DOLIVRAMENTO responds "let him help out."  At
(12:12) Washington tells DOLIVRAMENTO "Oh and then he told me he was like what

he goes like what Devin got his shit?  I was like 'yeah he goes yeah' because as soon as

he went and got that shit he was like, he posted it on his snap chat trying to show it off I

was like I'm dead."

18.     I interpreted the above-mentioned call to mean that FERNANDES posted

pictures of DOLIVRAMENTO'S firearm on social media (Snap Chat) in an effort to

show off.  I know that Snap Chat is a social media application that is typically accessed

through a user's cell phone.

19.     Within the last week, the SUBJECT VEHICLE has been routinely parked

in the tenant parking area of the SUBJECT PREMISES, and FERNADNES has been

observed coming and going from the SUBJECT PREMISES as well as operating the

SUBJECT VEHICLE.

20.     Additionally, cell phone location data provided by T-Mobile pursuant to

the Court's Order has shown that call number 401-548-1956 (FERNANDES' number)

has been pinging in the general vicinity of the SUBJECT PREMISES.

### *Seizure of Electronic Devices*

21.     Based on the above, I believe that there is probable cause to believe that

DOLIVRAMENTO is a felon in possession of a firearm that is being stored for him by

FERNANDES at the SUBJECT PREMISES.  Based on my training and experience, I

believe probable cause exists that the telephones and or other electronic devices as

described in Attachments B-1, B-2, and B-3, found on his person or in the SUBJECT

PREMISES and/or SUBJECT VEHICLE will contain evidence, fruits, and instrumentalities of the TARGET OFFENSES, including, but not limited to photographs of the firearm in question and social media posts related to the firearm.

22.     A cellular telephone is a handheld wireless device used for voice and text communication as well as for accessing the internet. Telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls and text messages made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet, including electronic mail ("email"), iMessages, Facebook Messages, and other forms of electronic communications. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. Based on my training, experience, and research, I know that many cellular telephones have capabilities described above. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests

9

who possessed or used the device as well as his criminal accomplices. I am also aware that individuals seeking to secrete or transport an illegally-possessed firearm' often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection, and often use text messages in lieu of phone calls to avoid speaking over the telephone.

23.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones and mobile phones can now function essentially as small computers. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

24.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that electronic files or remnants of such files can be recovered from smartphones and mobile phones months or years after they have been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

> a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their telephones, they can easily transfer the data from their old telephone to their new telephone.

    b.  Even after files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a telephone, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time.  In addition, an operating system may also keep a record of deleted data in a "swap" or "recovery" file

    c.  Wholly apart from user generated files, storage media—in particular, internal hard drives—contain electronic evidence of how the device has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

    d.  Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."  The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

25.    Based on all of the information that I have obtained in the course of this investigation, and for the reasons more specifically set forth herein, I believe that DOLIVRAMENTO and FERNANDES used and continue to use cellular telephones in the commission of the TARGET OFFENSES.  I believe that FERNANDES uses smartphones and/or telephones to facilitate the TARGET OFFENSES, to communicate with DOLIVRAMENTO and with co-conspirators, and that communications, records, appointments and other information will be found on FERNANDES'

smartphones/telephones, and that their smartphones/telephones will be found on or near them.

*Biometric Access*

26.     The search warrant also requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

    a.  Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

    b.  In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

    c.  Thus, the warrant(s) I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress the user's thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of the user's face with her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

d.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

### *Request to Seal*

27.    Because they reveal the existence of an ongoing investigation, I request that the warrant, this affidavit, and the accompanying applications in support thereof be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against the flight of fugitives, and better ensure the safety of agents and others, except that copies of the warrants in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the ATF, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrants.

### *Conclusion*

28.    Based on the facts contained in this affidavit, I believe there is probable cause to cause to believe that the requested search warrants will reveal evidence of Federal Offenses committed by DOLIVRAMENTO, including, but not limited to, the TARGET OFFENSES

29.    I, Meaghan Croke, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

Meaghan Croke
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives.

Attested to by the applicant in accordance with the requirements of Fed.R. Crim. P. 4.1 by telephone.

_____                   _____
*Date*                                                              *Judge's signature*

 Providence, RI_____                   Patricia A. Sullivan, US Magistrate Judge
*City and State*                                            *Printed name and title*

14